You're an appellant, so if you could begin your presentation. You may not have appeared in front of an appellate court, but we'll be asking questions of you at various points. If you could answer as best you can, that would be great. Thank you, Honorable Justices of the Third Circuit Court of Appeals, for hearing the appeal I filed before you to help protect and save my home in the Virgin Islands, which I fought hard to build and continue to fight hard to keep away from an unjust foreclosure, the First Bank's unfair actions against me. There were several actions that were taken against me by the court that are against the law, which I'm appealing today. As an initial matter, the district court should not have allowed my boyfriend at the time, Jim Lawrence, a non-attorney, acting under a durable power of authority for finance, to make an appearance for me. There is a question about that very point. Did he represent you at your request? How did he end up representing you? He represented me at my request. You knew who he was? Had you known him for a while? Did you know he was a non-lawyer? Yes. Okay. All right, thank you. I'm sorry. Go ahead, please. This included accepting a letter as an appearance on my behalf on March 2, 2017, which then led the court to enter an order setting a Rule 16 conference. This further led to First Bank's counsel meeting with Lawrence on March 14 and 19 to discuss and negotiate a Rule 26F trial management order. This order was submitted to the court on April 3 at the report of parties planning meeting. On April 4, 2017, despite explicitly acknowledging that Lawrence could not appear in court as my representative and that Lawrence could not sign and submit pleadings on my behalf, the district court adopted the trial management order that Lawrence negotiated. That order has governed my case since, in which the court, as I will speak about later, refused to amend or allow for a deviation after the hurricane, resulting in my inability to file my counterclaims concerning the negligent actions taken against me. I have a question about the hurricane. As I understand the facts, if we look at the timeline, there was quite some time, giving you an opportunity to file your answer or any motion that you sought, until September 6, I guess, when the hurricane hit land. You're out until September 13. The order that seems to be the focal point of a lot of discussion is entered October 2. Now, if your papers were due three weeks before and you didn't make any kind of request until at least a couple of weeks after Judge Lewis' order with regard to the Virgin Islands, why should we consider now, on appeal, trying to unravel all of that? I retained my trial attorneys on August 22 and requested a leave to file a response of pleading out of time. I thought you were granted until September 13 to file your pleading out of time. But I retained my attorneys on August 22. Okay. When did your attorney enter the appearance, though? I didn't think your attorney entered the appearance until October. We filed a response of pleading on August 23, pursuant to the court's order. Okay. I thought there was nothing filed, and that was the whole point of your request for extending the deadline. If it was filed on August 23, then what was lacking? What was lacking is the counterclaims, because the understanding was that there are 15 days to file the counterclaims after the initial filing. Right, and the counterclaims were not filed by September 13. The order extending deadlines by Chief Judge Lewis wasn't until October 2. And then a request was made after that to extend the time. So I guess our question, at least my question is, given that timing, how and why should we undo all of that? My counsel filed a motion for leave to file on August 22 after given 24 hours to respond. We compiled knowing we had 21 days, which was September 13, to respond. But the first hurricane took place September 6. Right, but the court ruled that the October 2 order did not apply to your case. So in order for us to grant you relief, one of the things that you have to persuade us about is that that October 2 continuance order should apply to your case. Now, tell us, what is it about that order that should apply to your case? And why was the court wrong when it said that that order does not apply to your case? Chief Judge Wilma Lewis entered an October 2 order extending all deadlines for all civil and criminal cases from September 5 onwards to October 29. The district court and plaintiff state that the order was for actual court appearances and that all deadlines, including my September 13 deadline to file, and amended pleading remained. And that I and my attorney should have found electricity and internet connection during a 24-hour curfew after the most devastating hurricane had just destroyed St. Thomas. And the second most devastating hurricane to strike St. Thomas would be hitting the island six days after my September 13 amended pleading. If the order applies to all court appearances, if your case did not require or involve a court appearance, then that order doesn't apply to you, does it? I'm sorry, you got a little muffled and I didn't hear all that. If that order involves court appearances, and your case at that point in time did not involve or require a court appearance, how then does it apply to your case? Did you hear my question? I did. If this order had only applied to actual appearances in court, it would have specifically stated that all court appearances scheduled before a district court's judge are continued. It did not and made no mention of court appearances. What the order did say was that our electronic filing system is available for the filing of documents. Now, when an order from the chief judge says that, that leads one to believe that if the order with regard to extensions applies to in-court appearances, because obviously none of the courthouses were up and running, but that the electronic filing system was up and running and that documents that had to be filed could be filed. Now, you made your motion on October 24th. Is that the first day you had Internet? Because the court's order on October 2nd would lead a reader to believe that there was Internet allowing electronic filing on October 2nd. Although the deadline was October 29th and we filed prior to the deadline. I'm sorry, I didn't hear the last part. I apologize. I'm sorry. My mention was that any deadlines associated were allowed between September 5th through October 29th. So October 29th was the deadline for filing and we filed October 24th prior to the deadline. May I ask you a question that skips to the heart of perhaps one of the problems here? Is it correct that you failed to make any of the escrow payments that you were required to make? My last payment was in June of 2017. Okay. Were you up to date on your escrow payments? Yes, until June 2017. So between June of 2017 and now you've made no payments at all, is that right? That's correct. Judge Lips, did you have something because I was going to jump into another topic if that's okay. That's perfectly fine with me, Judge Greenwood. Okay. I was just curious, Judge Greenwood, just one question. Of course. The counterclaim that was, if I pronounced your name correctly on the site. That's fine. Why is the essence of the counterclaim against the bank? If you were a non-champ, they got counterclaims. There are several counterclaims. Excuse me one minute. I'd like to be accurate so I am looking for the actual counterclaims. Pardon my taking a few minutes here. Okay, maybe you can find that later. I don't want to hold things up. But you do say that you are current on all of your required payments in accordance with the agreement that you had reached with the mortgager. I made payments up until I checked this before this hearing. My last payment was made on June 2017. June 2017. My question is not whether you made a payment here, here, or there. Were you current on your obligation to make payments? Yes, I believe so. Okay, thank you. When you say current, I want to make sure I understand. You've made no payments since June of 2017. Yes. Of any kind. Is that right? Correct. Okay. Just to weigh in, were you current on your payments in February 2017 when this action was filed? I just have to get out my calendar. I have payments. I have my last payment showing in the amount of $5,849 on June 8th. And so my question was, you know, I mean, at least as I understand mortgage agreements, there's this notion of, you know, you have to make payments by a certain point in time. If you don't make payments, then you go into default. And then there's certain, what they call, you know, acceleration triggers. Do you owe the whole amount or can you get back to making regularly scheduled payments? And that depends on the details of the individual agreement. And most agreements, like the one here, have as a remedy foreclosure. If you're in default and, you know, you can't pay the full amount, you can't cure the acceleration provisions and stuff like this. And so my question goes to, well, look, at the time that this started, were you current, you know, or were you on acceleration? Or, you know, where did it stand at that point in time? Well, I know that the – I don't have the dates off the top of my head. So, you know, the bank started foreclosure proceedings. I didn't have an attorney, as you know. And I was in a very distressed state to the point that I couldn't appear myself. I was under medical care. So to answer the earlier question, that's when I asked Mr. Lawrence to attend on my behalf. Not knowing, not having any legal knowledge that I needed to appear myself. Let me follow up on that. You don't dispute that your mortgage and your responsibility under the mortgage, you work in actual default. You don't dispute that, do you? No, I do not. What I am disputing is the way that the courts and First Bank handled the proceedings. That is what I am appealing today. And you don't dispute that because of the default, the bank has a right to foreclose the property? No, I do not. It is the manner in which this was handled. I see. Thank you. Can I ask about the Fraudulent Reducement Affirmative Defense? The district court, when analyzing it, said that the problem is that the case sounded more like economic duress than fraudulent inducement. Let's stay away from whether that's correct at the moment. In your view, what is the fraud that was perpetrated upon you? There were several incidents. The first one that began this whole journey was in rewriting the construction loan to the permanent mortgage. I was told that after retaining occupancy permits that I would receive that the loan would roll over to a permanent loan in one week. And I do have that in writing from a bank, from someone authorized at the bank. It took 14 months before it rolled over. And that's when the December 27-13 refinance agreement was drawn. So when I was told to get an occupancy permit, I was also told that it had to be two units in order to get the size of the loan that I needed. So I needed to reverse all of my planning in the construction and build a second unit, an apartment, on the lower level. And again, I was told when I received occupancy, that loan would roll over to a permanent fixed mortgage. But that was fraudulently promised and taken away. So what in essence has happened to me in my journey is that the bank promised me all things but kept changing the finish line. And when you say the bank changed in all things, was the document that constituted the agreement, there were different iterations of that? But on each of those, you had an opportunity to review it? Is that right? Yes, but when I was faced with signing the December 27, 2013 refinance agreement, it had an exculpatory clause that basically stated that First Bank, you know, whatever they did in the past or whatever they did in the future, they were not responsible for. But I was under duress and I needed to sign that document and move on and try to finish my home. I'm sorry, the duress that you're talking about is the pressure to finish your home? Is that what you mean by duress? Yes, and financial duress, because I was paying for a lot of it out of pocket at that point. The mortgage wasn't even near close to. I had to pay out of pocket for those 14 months to keep the construction going. But you chose to sign the document knowing what the document said and the consequences of it, did you? I had really no choice or lose the house then. If I didn't sign it then, I would have lost the house then. I was hoping I would get through this construction and I don't feel that I had a choice but to sign it. And again, I was under extreme emotional and mental duress. I was on medication and seeing a therapist. What the bank had done to me up to that point was so stressful I can't even describe it. What the bank did to you, you say? Yes, in terms of changing the finish line as we went and the great delays that I had during the construction. Well, the finish line was in your hands, wasn't it? I mean the finish line in terms of the construction of the house. Well, when I say finish line, I was supposed to convert over to a permanent mortgage. That changed. That line changed. It was moved up 14 months and I still had to continue to try to finish the house on my own money. So yes, to me the finish line did keep changing. Judge Cortes, do you have anything further? No, I'm fine. Thank you. I'm sorry. My connection isn't good. I didn't hear what you said. I'm sorry. Oh, no, no. I'm fine. Thank you. I'm okay. I have nothing further. Okay. Judge Phipps? No, nothing further. Thank you. Okay. Ms. Massidi, there's something called rebuttal and we didn't discuss a rebuttal time. But we'll give you a couple of minutes after the attorney for the bank goes for you to end your presentation. Okay? Yes. Would I be allowed to complete my presentation? Well, it really doesn't go by the attorney formally making the presentation over a period of time. The period of time is left for the questions that the court presents. So you'll have another period of time to answer our questions and that's the way in which you'll be able to let us know what your thoughts are. Thank you. Okay. Thank you. Counsel? Good morning, Your Honors. Carol Rich on behalf of First Bank Puerto Rico. Can everyone hear me okay? Yes. Thank you. The first thing I want to do is just clarify a couple of factual errors that were discussed by Dr. Massidi. The record, and we've provided this to the court in our supplemental appendix, showed that an attorney first entered an appearance for her on July 13th of 2017 and then another attorney entered an appearance for her on July 20th, 2017. And after that, the magistrate issued an order requiring an answer or a responsive pleading to be filed by July 24th, 2017. Despite having two attorneys, nothing was filed. Then finally, on August 23rd, another attorney entered an appearance, all these attorneys from the same law firm, by the way, and asked for an additional 24 hours to file the answer, which was permitted. And so an answer was finally filed on August 24th, which was nearly six months after the answer would originally have been due. And so it is not accurate that there was only 24 hours provided for the attorneys who were representing Dr. Massidi to put together an answer. They had three months to do so. And they never provided any explanation for why, when the answer was filed on August 23rd, they did not simply include whatever counterclaims they wanted to file at that time. The second thing I wanted to clear up is the sequence of events regarding electronic access, which Your Honors had asked about. Dr. Massidi's lawyers, the law firm of Boltnage, did indeed have damage to their office, but they immediately relocated to an office inside a fully functioning building and, in fact, filed a notice with the court indicating that their office had been up and running since October the 1st of 2017. Also, in response to our opposition to the motion for leave to have additional time to file counterclaims, we pointed out that that same law firm filed pleadings in other cases in September of 2017. So, obviously, they had access to the Internet and could have filed documents in this case had they chosen to do so. Counsel, let me ask you a question. Yes, sir. What you just represented, it went very quickly, and I wanted to make sure that I had it accurate. Of course. You said that on October 1st of 2017, the firm filed a notice with the court that they were up and running, but then a few moments later, you said that they filed electronic filing in other cases in September of 2017. And I think you used the date, and I didn't hear the date. What date was that? September 14th of 2017, they filed a complaint initiating a new action in the District Court of the Virgin Islands, St. Thomas, St. John, and a copy of the docket sheet showing that filing was included in our opposition for the motion for leave to extend the time to file counterclaims. And it's in our supplemental appendix, and I can indicate to you where that is if Your Honor wants to see it. It is supplemental appendix page 301, and it shows that the same lawyer who is representing Dr. Massidi in this case filed a complaint initiating a new action on September 14th, 2017, electronically with the District Court. The October 1st date, there were a couple of different notices. They filed a notice indicating their new address. But in the motion for leave to file counterclaims, which they filed on October 24th, in that motion, they acknowledged that their office had been relocated and reopened by October 1st. So that is actually in the motion for leave to file counterclaims. They acknowledged that they had been up and running since October 2nd. I also note that the record contains and the magistrate referred to Hold on one second. One moment. So the October 1st date is really not relevant to your argument, because your argument is they were up and running on September 14th. So if they were a day late on the September 13th deadline, that would have been a horse of a different color. But they didn't file until October 24th and without leave of court. And that's the problem. Yes, exactly. And in addition, Your Honor, I note that the District Court entered an order in earlier October, which is also in the record, which specifically said that the District Court for St. Thomas was fully open as of October 10th. And so Judge Lewis's order suspending certain proceedings through October 29th really had nothing to do with the ability to meet filing deadlines for various matters governed by the Federal Rules of Civil Procedure. And that is exactly what the magistrate held and what the District Court affirmed. But yes, the argument that these particular attorneys were unable to file due to the storms is not accurate. And in fact, they did not make that argument. And that's probably why. They also obviously were aware that they were out of time on the counterclaims, because they did not file a notice of filing of amended pleading as of right, which they could have done if they were within the time frame. They filed a motion for leave, which is an acknowledgment that they knew that they were late. So from your perspective, what orders in the court are we looking at or should we focus on? Well, I just want to add, I wanted to address the inaccurate dates that were discussed earlier. But this whole thing is actually irrelevant, Your Honor, because the counterclaims, which we did provide in our record for some odd reason, Dr. Mecitti's record did not include them, were the same things that were argued in their opposition to the motion for summary judgment and were raised in their affirmative defenses. So there were just two counterclaims. One was for an alleged violation of the Unfair Trade Practices Act and one was for fraudulent inducement. They abandoned the Unfair Trade Practices Act argument in their opposition to summary judgment, although they could have raised it if they wanted to. And they argued the fraudulent inducement and the judge rejected it. So aside from the fact that there were all these orders, it's not really relevant because it didn't harm Dr. Mecitti in any way. But to answer Your Honor's question, there were, I would say, the trial management order set May 1st as the date for amendments to pleadings. The first appearance by counsel was July 13th. The court issued an order in July requiring the filing of an answer or responsive pleading by July 24th, 2017. All these documents are in our appendix, Your Honors. That was ignored. They said it's a not terrible assessment, but what is your – which of these orders in this case, from your perspective, is the order that we should be looking at? Because you had several decisions at the district court, right? I'd like to focus on the one that's the assessment regarding these claims. I'm sorry. That was a bit muffled, Your Honor. But are you asking me which order is most important regarding this timing issue or which order is most important regarding the actual substance of the merits of this appeal? Yes, the substantive issues, please. Thank you. I would say, Your Honor, the substantive issues are addressed in the memorandum opinion explaining why the court entered summary judgment, which was entered on August 15th of 2018. Okay. That would be the motion for summary judgment. Yeah, that would be Judge Gomez's opinion explaining his reasons why he had entered the summary judgment back in February of 2018. February 15th, yes. Okay, thank you. August 15th is the date of that opinion by the judge. And on, I believe, a couple of days before or after that, he also entered an order explaining the reasons for the issue of the counterclaims. But I would say the second most important order would be the order that was entered denying the motion for reconsideration. Okay, that was August 19th. Yeah, and that was in 2019. That was a year later. Okay, thank you. And here's why, Your Honor. In the motion for summary judgment, in the opposition to the motion for summary judgment, when Dr. Masitti was represented by three lawyers, the only arguments that were raised in that opposition were based on the claim that they should be granted time to conduct additional discovery, the fraudulent inducement argument, an allegation that First Bank delayed in dispersing approvals for releasing construction funds, and an argument that the court should follow certain cases out of Texas, a nonjudicial foreclosure state, regarding a separate notice of acceleration. The court correctly rejected all of those arguments. We actually argued different reasons than the ones adopted by Judge Gomez, which equally would reject those arguments, including most specifically the fact that the tort arguments were barred by both the statute of limitations and ratification, which is under the law of the Virgin Islands, as expressed by the Virgin Islands Supreme Court in the Brouillard decision, which was cited in our brief, Brouillard v. DLJ Mortgage Capital, 63 VI 788, addresses these things specifically. And I note that in response to the court's questions about what was the fraud, Dr. Masitti was referring to events that took place prior to 2013. And those issues, in addition to having been waived by the signing of the documents and waived because she then accepted $1 million in loan proceeds, were also barred by the statute of limitations. All of the arguments on this appeal, or most of them, were not raised in response to the motion for summary judgment, but were raised for the first time in the motion for reconsideration. Let me jump in on that motion for reconsideration a little bit. Yes, sir. As you know, we have federal courts are courts of limited jurisdiction. Appellate jurisdiction is part of a federal court's jurisdiction. Appellate jurisdiction can be a little bit of a tricky issue at times. But generally, I think, and let me know if you disagree with this statement, but generally a notice of appeal cannot predate a court order that's being appealed. Now, sometimes it can predate the actual filing of the judgment, but generally you can't file a motion and then say, hey, I'm going to appeal, whatever the order is. You don't get an opportunity to predate the filing of a court order with your notice of appeal. Now, here the notice of appeal was filed before the court order on the motion to reconsider. Do you think that that filing, that the denial of that motion for reconsideration, is within our appellate jurisdiction since there was no subsequent notice of appeal filed and it doesn't seem to fit into the list of motions under the federal appellate rule 4A4 that specifically says, well, these motions get different treatment. The motions for reconsideration don't get that different treatment. So do you think, so all that's background, and now the question is this, do we have appellate jurisdiction over the order denying the motion for reconsideration? I would agree with Your Honor that you don't. And, in fact, there was a great deal of confusion in the status of this appeal, and I suppose that's what led to it because the judge issued judgment in February of 2018. Let me push back a little bit. The term judgment is really a term of art. There was no separate judgment entry in this case. There was an order granting summary judgment, but no separate document entering judgment as required by Civil Rule 58. So there's no separate document. There's just an order in February. Is that right, or am I misreading the docket and there's some separate entry of judgment apart from the order? Your Honor, the order granted a judgment and set forth all of the remedies to go forward and proceed with seizure and sale of the property. No, no. I understand that that's what you're – my only question is, is there – because for appeal time periods, there's a separate document rule that says you have to – and you can issue an order, then you have to enter a judgment. And if you don't enter a judgment, the time for appeal extends by 150 days under Rule 58. And so I'm not doubting at all the order's existence. My question was in the absence of a separate judgment, the time for appeal would potentially be extended. That's true, Your Honor. And again, I think that because of the way in which the order and the judgments were entered in this case with long time periods between one and the other, it created a lot of procedural confusion as to when the appeal became timely and whether a second notice of appeal was necessary. And, in fact, we had filed a motion indicating that we believe the second notice of appeal was required in order for this appeal to proceed after the judgments were finally entered, and that never happened. And so I agree that there's a question there. I think ultimately the problem I was raising regarding the motion for reconsideration is that most of the issues raised by Dr. Masitti in her brief are issues that were never raised prior to the summary judgment order or judgment being entered, and so therefore aren't properly before the court regardless, because they were never raised before judgment was entered. Is it the case that this order denying the motion for reconsideration was entered something like over a year, maybe a year and a half after the summary judgment was entered? Yes, Your Honor, that's true. Okay. So this is correct. Thank you. I'm sorry. Could you – I didn't hear the question, so I didn't – Oh. I don't have the gravamen of why the answer is as it is. What was the question? I didn't hear it. Let me repeat. The order for granting the order granting the motion for summary judgment was entered February 15, 2018, and a year and a half later there was an order denying the motion for reconsideration. Well, Your Honor, I don't think the appropriate time to file a motion for reconsideration. Okay. Is that correct, Ms. Hewitt? Is that correct? The order granting summary judgment was entered on February 15th of 2018, and because the opinion hadn't come out yet, what Dr. Masicki's lawyers did is they filed a motion for reconsideration and a notice of appeal. And as a result of that, this court put the appeal on hold until such time as the judgments were issued, resolving those things. And it took another almost year and a half for that to happen. So your position is that the discussion of Rule 58 is academic because the motion for reconsideration was never properly included in a preexisting notice of appeal, nor was there a new or separate notice of appeal nearly mentioning the motion for reconsideration. That is correct. That is correct. There were no new notices of appeal filed after the decision finally came out resolving that motion. So what this means is, if I understand your position correctly, is that because there might not have been a separate judgment filed under Rule 58, that gave the defendant additional time to possibly file a notice of appeal or do anything like that. But her motion for reconsideration was the order that resolved that was not covered by that additional time and would have required a separate notice of appeal. I think so, Your Honor. I think that once the problem was that the notice of appeal had already been filed and this Court entered an order indicating that the appeal would not proceed until the motion for reconsideration was resolved because it was a timely post-trial motion. That's fine. But I do agree that once the motion for reconsideration was resolved and therefore the appeal from the original judgment was now able to proceed, there should have been a second notice of appeal from the denial of reconsideration, and that never happened. This is kind of like a civil procedure class on why we have Rule 58. Yeah, and this whole case is kind of a civil procedure nightmare, to tell you the truth, Your Honor. My client has asked me frequently, why did this take so long? And I don't have an answer as to why. It took almost two years from the time of the order granting summary judgment until this appeal was finally able to proceed. But the substance, Your Honor, I would argue, is that the District Court correctly entered summary judgment and correctly rejected the defenses that were raised for summary judgment, and nothing that has been presented on this appeal changes that. And I also would like to point out that in addition to all of the other defects in the response to our motion for summary judgment, there never was any counter-affidavit in response. The document that is referred to as an affidavit is an unsworn statement from Dr. Messiti. It's not an affidavit, and no documents were attached to it. So there was never a proper defense to the motion for summary judgment on any of these factual issues, and there's nothing in the record below to support any of these factual issues in a proper way. And again, there were several lawyers involved below, and so the failure to provide a proper affidavit and comply with Rule 56, there's no excuse for that. And the fact of the matter is this borrower was given over two years of deferments, numerous extensions of time and attempts to work with her, received a million dollars, and as of the time that this action for foreclosure was filed, had made no payments. During the deferment period, she was supposed to pay to escrow. She did not. The bank did not foreclose at that time but continued to work with her. After the deferment expired, she asked for more time. The bank said no, all of this is in the affidavit in support of our motion for summary judgment. And at the time that we filed the action, no payments had been made at all for months and months and months, and the amount due under this loan is almost $1.1 million, and the bank has been out this money for seven years, dating back to when they first started disbursing money back in 2013 and 2014. I'm sorry, six years. And so the only injustice here, Your Honor, is that this has drifted on for so long with no proper resolution. The bank followed all the rules, gave every possible consideration to this borrower, provided appropriate evidence to the court of everything along the way, complied with every order, and summary judgment was properly entered based upon the uncontested documents. That sounded like a summation. Well, if you have any other ñ you asked me about the merits, so that was my addressing the merits, Your Honor. Let me ask you, yeah, one last one. Mrs. C claims that it's the statements made by the bank that caused her alleged misrepresentation. That's what caused her default. Could you respond to that? Your Honor, the statement she's referring to would have taken place sometime prior to 2013, and so I don't see how that is relevant to a default for payments that were due in 2016. The first payment ñ Well, if it's the representation or misrepresentations that cause your default, that's what she says, regardless of when they were made. Well, there's no proof that those misrepresentations happened, and so it's very difficult to address them, and I would argue that the court can't even consider them. They're alleged oral statements made regarding a mortgage loan, and so they would violate the statute of frauds. They were not raised as a defense until more than five or six years after the fact, so they're barred by the statute of limitations, and she accepted the entire million dollars, which was all disbursed, and so the agreement was ratified. I don't know whether some loan officer said something that Dr. Masitti interpreted in the way she says. It's impossible to know that because nothing's in writing, which is exactly why those kinds of defenses aren't appropriate to an action to foreclose a mortgage. Let me just ask this about the statute of limitations point. Statute of limitations usually apply to claims, not defenses. So if a person has a defense, if their defense is settlement and release, they can raise that 20 years later if someone sues them, 20 years later. There's really no statute of limitations for defenses. So if this were properly raised, I don't know that there's a statute of limitations issue. Well, that's not the law of the Virgin Islands with respect to a counterclaim alleging that there was a fraud. Counterclaims, yes, but not defenses. If it's a counterclaim, it's too late. But as a defense, as a fraud defense, it would be there's no statute of limitations. Am I right, or do I have the law wrong on the Virgin Islands there as well? I would suggest that whether it's a defense or a counterclaim, there is still an issue there with the statute of limitations. But aside from that, Your Honor, I would also argue that there's an issue there with the ratification and the lack of evidence. Because, remember, the fraud defenses that she's raising are based entirely on an unsworn statement. There's nothing in writing. No discovery was done, although she had three lawyers who could have done it. There isn't a single witness that backs up this alleged fraud. So basically there's no evidence that the district court could have relied upon. And, in fact, Dr. Masicki's own statements indicate that her version of fraud is just that she thought she was going to get better loan terms and therefore made decisions to spend money on building her house. It's unclear to me what the fraud even is because she was given a loan. She was given deferments. She was given clear documents to sign, and she signed them. And she is a sophisticated borrower with a Ph.D., and none of these defenses were properly raised, and there's no evidence in the record to support any of them. I mean, defenses need evidence, and regardless of whether the court would determine that statute of limitations didn't apply to it as a defense, it still requires evidence, and an unsworn conclusory statement is not evidence. Well, the district court dealt with the two main affirmative defenses substantively anyway. Correct. And rejected them in a very well-reasoned opinion, and so the whole debate about the counterclaims, I think, is a complete red herring because it had nothing to do with what happened in this case. The district court still considered Dr. Masicki's main defense, which was her claim that she was somehow either fraudulently induced or under economic duress, and the district court even considered them despite the fact that there was no affidavit, just an unsworn statement, which, frankly, was more consideration than those defenses deserved. The court could simply have rejected them under Rule 56 and said they haven't been properly presented, and at this stage of the case, in response to summary judgment, it is the obligation under Rule 56 for the nonmoving party to then present admissible evidence of some kind, and none was presented, and that's clear. Thank you. Judge Fuentes, do you have anything more, sir? Thank you, Judge Reno. I know. I'm fine. And Judge Stitt? No, I have nothing further. Thank you very much. Okay. Thank you both. Thank you, Your Honors. Thank you. Dr. Masidi, we'll give you two minutes for rebuttal. I would just like to state plainly that it wasn't all hearsay. There are e-mails written by Dena Perry and Dennis Dorr of First Bank stating that I would have, be able to move my construction loan to a permanent fixed loan within a week. So there is, in fact, documentation around that. I continue to stand by the arguments presented in my brief on fraudulent practices of First Bank, misrepresenting what they claim to do. My state of affairs presented in 2013 include negligence causing a six-month delay in the closing of the refinance agreement dated October 2010, plaintiff incompetently, negligently, falsely, and or fraudulently made statements to me regarding the process, which I just explained. Despite the issue of an occupancy permit by the Department of Planning and Natural Resources, plaintiff required construction in the home to be verified complete before converting the loan, which was never verified. They caused me to suffer extreme duress, which condition existed at the time until the parties entered into the December 27th refinance agreement so that I had no right or ability to negotiate any material terms. Plaintiff intentionally inserted language into the agreement documents that violates plaintiff's duty to deal in good faith and with fair dealing, violates Virgin Islands public policy, and is devoid as a matter of law because the language seeks to waive any and all liability on the parts of the plaintiff for its admitted fraud. After December 27, 2013, plaintiff took total control over the home construction through its supervisor, Serenity Builders, which again never claimed verified completion of the property. Thank you very much, doctor and counsel. We appreciate the argument and we'll take the matter under advisement.